IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GLOBAL CHECK SERVICES, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:14-cv-00244 |
| | § | |
| | § | |
| ELECTRONIC PAYMENT | § | |
| SYSTEMS, LLC, FLEXPAY, LLC., | § | |
| AND ELECT-CHECK, INC., | § | |
| JOHN DORSEY, TOM MCCANN, | § | |
| and ANTHONY MALEY, | § | |
| Defendants. | § | JURY DEMANDED |

**PLAINTIFF, GLOBAL CHECK SERVICES, INC.'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT AND REQUEST FOR INJUNCTIVE RELIEF**

Plaintiff, Global Check Services, Inc., files this complaint for patent infringement against Defendants, Electronic Payment Systems, LLC, FlexPay, LLC, Elect-Check, Inc., John Dorsey, Tom McCann, and Anthony Maley, and would show the Court as follows:

**I.
PARTIES**

1. Plaintiff, Global Check Services, Inc. ("Global Check"), is a California corporation with its principal place of business in San Diego County, California.

2. Defendant John Dorsey, is an individual who resides in the State of Colorado and who may be served at his business address of 6472 S Quebec St., Englewood, Colorado 80111, or wherever he may be found.

3. Defendant, Tom McCann, is an individual who resides in the State of Colorado and who may be served at his business address of 6472 S Quebec St., Englewood, Colorado 80111, or wherever he may be found.

4. Defendant, Anthony Maley, is an individual who resides in the State of Colorado and who may be served at his business address of 6472 S Quebec St., Englewood, Colorado 80111, or wherever he may be found.

5. Defendant, Electronic Payment Systems, LLC ("EPS"), is a Colorado limited liability company with its principal place of business in Englewood, Colorado. Electronic Payment Systems, LLC may be served with a copy of this complaint by serving its registered agent, John Dorsey, whose registered address is 6472 S Quebec St., Englewood, Colorado 80111.

6. Defendant, FlexPay, LLC. ("FlexPay"), is a Colorado limited liability company with its principal place of business in Englewood, Colorado. FlexPay, LLC may be served with a copy of this complaint by serving its registered agent, John Dorsey, whose registered address is 6474 S Quebec St., Englewood, Colorado 80111.

7. Defendant, Elect-Check, Inc. ("Elect-Check"), is a Colorado corporation with its principal place of business in Englewood, Colorado. Elect-Check, Inc. may be served with a copy of this complaint by serving its registered agent, John Dorsey, whose registered address is 6472 S Quebec St., Englewood, Colorado 80111.

## II.
## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

9. Venue is proper in this Federal District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b) in that a substantial part of the events giving rise to the claims occurred in this district and the defendants have a regular and established practice of business in this district and have committed acts of infringement in this district.

## III.
## FACTUAL BACKGROUND

10. David Homoki ("Homoki") formed a business called Global Check Services in 1995 to provide check-processing services to merchants for a monthly fee and a percentage of each check processed.

11. David Homoki initially operated Global Check as an unincorporated entity, operating as David Homoki d/b/a Global Check Services.

12. Global Check was incorporated in California in 2010 and does business in several states, including California, Texas, and Louisiana. Global Check is the successor in interest to David Homoki d/b/a Global Check Services.

13. David Homoki, through his business, Global Check, revolutionized the check processing industry when it developed, and subsequently patented, its exclusive Multi-Pay Conversion Program known as Account Receivable Conversion ("ARC"), which is a "90 days same as cash" program. The ARC program allows a merchant's customer to have a 90-day payment option, where the customer can provide the merchant with any number of

checks, written for any amount, to pay off the purchase over a 90-day time period.

14. Within a few months after the ARC program was made operational, on or about March 10, 2006 David Homoki filed for a patent on ARC process.

15. On June 29, 2010, United States Patent No. 7,747,529B2 ("the '529 patent") was issued to David Homoki.

16. On or about March 22, 2011 the '529 patent was licensed to Global Check, Inc., and Global Check, Inc. became the exclusive licensee of licensor David Homoki's '529 patent.

17. This license was recorded with the USPTO on or about March 24, 2011. (Confirmation Receipt from USPTO Exhibit "D").

18. The basis of the '529 patent was to provide merchants around the United States with the option of utilizing electronically converted payments in the future for goods purchased and received on the date of sale.

19. This was primarily done through the Accounts Receivable Conversion of checks, which would have to be approved by Global Check through a risk matrix, which included information obtained from a third party data base.

20. Accounts Receivable Conversion ("ARC") is the process of converting a physical personal check into a negotiable instrument at the point of sale. The benefit of Global Check's ARC program is that it converts not only a check presented to the merchant on the day of purchase, but also converts post-dated checks. The converted negotiable instruments are then an approved accounts-receivables instrument. Under the provisions of the Global Check ARC program, the check (when it becomes a future accounts receivables

instrument for a merchant) is guaranteed for funding by Global Check, if the merchant has obtained pre-requisite information on the check writer, and if the check satisfies Global Check's internal requirements for guaranteed payment.

21. A merchant utilizing the ARC program uses a credit card terminal or check reading device (scanner), to convert a physical check into electronic data, and transmits that data via telephone or Internet to Global Check for processing.

22. The program was unique because Global Check was able to provide a guarantee on future (post dated) checks, not just checks presented on the date of sale. No other check processor had this program available when Global Check initiated the program.

23. Global Check spent a considerable amount of time and effort to develop the Account Receivable Conversion (ARC) program, incurring time, effort, and experience to develop the formulas, compile the information, and to develop a program that gave Global Check an opportunity to obtain a decisive edge in the market. At the time that Global Check introduced its product in the marketplace, no other company had provided post-dated check approval services for up to 90 days in advance.

24. During the course of litigation against EPS and another company, Conversion Services, Inc., Homoki and Global Check learned that Conversion Services, Inc., had provided EPS with highly confidential information regarding its ARC program, and that EPS, John Dorsey, Tom McCann, Anthony Maley, and their affiliate ventures, were infringing upon the '591 patent.[1] Homoki and Global Check further learned that EPS,

---

[1] David Homoki d/b/a Global Check Services sued EPS in a related proceeding for tortiously interfering

*Plaintiff's Original Complaint* Page 5 of 17

with the assistance of John Dorsey, Tom McCann, Anthony Maley, and others, developed, made, used, and sold service identical to Global Check's service, branded under the name "EPS90." Conversion Services, Inc. was a corporation duly organized under the laws of the State of Texas, with its principal office in Harris County, Texas, which is in the Southern District of Texas. Conversion Services, Inc., and one of its principals, Lawrence Stewart, provided some of the highly confidential information regarding its ARC program from it Houston's office.

25. In fact, EPS's corporate representative, Anthony Maley, testified as to the infringement of the '529 patent by EPS. Under cross-examination, Maley acknowledged that each and every claim of Global Check's patent was incorporated into EPS' competing product, EPS 90.

26. EPS and the individual Defendants, John Dorsey, Tom McCann, and Anthony Maley, each collaborated to develop the competing product, based on Global Check's methods and practices, and the '529 patent.

27. Dorsey, McCann, and Maley repeatedly queried and met with Laurence Stuart from CSI to discuss protocols of how Global Check's program worked, and how Global Check constructed and implemented the ARC program.

28. After EPS set up a competing product, Dorsey and McCann developed an online version of the program, and have also rebranded a Flex Check option for their

---

with Global Check's contract with its agent, CSI. A United States Federal District Court entered a judgment against CSI for breach of its fiduciary duty owed to Global Check, and against EPS for tortuous interference with contract and conspiracy to breach CSI's fiduciary duty.

*Plaintiff's Original Complaint*  Page 6 of 17

product.

29. The actions taken by EPS, Dorsey, McCann, Maley, their affiliate ventures, and others, to infringe on the U.S. Patent for the ARC program, were done intentionally and knowingly, after Global Check had provided notice to both all Defendants of Global Check's intellectual property rights. (Cease and Desist Letters, Exhibit "A").

30. Even after such notice was provided, Defendant EPS infringed and continues to infringe on one or more claims of the '529 patent.

31. Even after such notice was provided, Defendant Dorsey, directly and through his affiliate ventures, infringed and continues to infringe on one or more claims of the '529 patent.

32. Even after such notice was provided, Defendant McCann infringed, directly and through his affiliate ventures, and continues to infringe on one or more claims of the '529 patent.

33. Even after such notice was provided, Defendant Maley infringed, directly and through his affiliate ventures, and continues to infringe on one or more claims of the '529 patent.

34. Defendant FlexPay, LLC infringed and continues to infringe on one or more claims of the '529 patent.

35. Defendant Elect Check, Inc. infringed and continues to infringe on one or more claims of the '529 patent.

36. Plaintiffs are informed and believe, and on that basis allege that FlexPay, LLC and Elect Check, Inc. are affiliates of EPS and / or Dorsey and McCann.

37. Plaintiffs are informed and believe, and on that basis allege that FlexPay, LLC and Elect Check, Inc. have consolidated operations with EPS, and reside at the same physical location as EPS.

38. Plaintiffs are informed and believe, and on that basis allege that FlexPay, LLC and Elect Check, Inc. are under the joint control of EPS and / or Dorsey and McCann.

## IV.
## CAUSES OF ACTION

**A. Patent Infringement of U.S. Patent No. 7,747,529 B2**

39. Paragraphs 10-38 are incorporated by reference as made necessary by the context.

40. Plaintiff Global Check is the owner of U.S. Patent No. 7,747,529 B2 ("the '529 patent"), entitled Method and System of Check Presentation. ('529 Patent, Exhibit "B" and Assignment of the '529 patent, Exhibit "C").

41. EPS, John Dorsey, Tom McCann, Anthony Maley, FlexPay LLC, and Elect-Check, Inc. (hereinafter "Defendants"), are jointly and severally liable for making, using, and selling the EPS 90 program in violation of patent number 7,747,529 B2, in this District and elsewhere in the United States.

42. Furthermore, Defendants, jointly and severally, knowingly infringed on the patent; knowingly incorporated the claimed processes from Global Check's patent into the

EPS90 program; and further expanded the EPS90 program into an additional infringing EPS program called "FlexPay."

43. Plaintiff alleges, upon information and belief, that Defendants, EPS, John Dorsey, Tom McCann, Anthony Maley, CSI, Laurence Stuart, FlexPay LLC, and Elect-Check, Inc., willfully and deliberately, without license, and with full knowledge of Plaintiff's patent rights, infringed on Plaintiff's '529 patent.

44. Unless restrained or enjoined by this Court, Defendants will continue to infringe on Plaintiff's '529 patent, and the damages to Plaintiff will continue to be substantial and irreparable.

45. Global Check seeks statutory damages under 35 USCS § 284, attorney fees pursuant to 35 USCS 285 actual damages, special and incidental damages, consequential damages, punitive damages, and triple damages pursuant to 35 USCS § 284 due to Defendants' willful infringement, and lost profits.

**B.    Constructive Trust**

46. Paragraphs 10-45 are incorporated by reference as made necessary by the context.

47. Plaintiffs are informed and believe, and on that basis allege that Defendants, EPS, FlexPay and Elect-Check are infringing on the '529 patent.

48. Because of the inequitable conduct of EPS, FlexPay and Elect-Check, Defendants have been unjustly enriched by usurping Plaintiff's patented process.

49. This court, sitting in equity, should therefore impose a constructive trust on the wrongful gains received (and which are still being received) by EPS, FlexPay and Elect-

Check from the sale of the EPS90 and FlexPay programs.

50. Global Check requests that this Court place a constructive trust on all revenues derived from EPS, FlexPay and Elect-Check in its EPS90 program as well the "FlexPay" and other related programs EPS has, which are based on the '529 patent of Global Check.

### C. Disgorgement

51. Paragraphs 10-50 are incorporated by reference as made necessary by the context.

52. In addition to placing a constructive trust on such funds, Plaintiff requests that the Court, upon trial and hearing, enter an order commanding EPS, FlexPay and Elect-Check to disgorge any amounts earned from their inequitable conduct and patent infringement.

53. Because the correct measure of profits would be difficult to prove, as both EPS, FlexPay and Elect-Check have conveniently lost or destroyed many of the hard-drive documents that are necessary to calculate damages, Global Check seeks a total disgorgement of monies received from the EPS90 and FlexPay programs.

### D. Conspiracy

54. Paragraphs 10-53 are incorporated by reference as made necessary by the context.

55. Plaintiffs are informed and believe, and on that basis allege that EPS, FlexPay, LLC, Elect-Check, Inc., John Dorsey, Tom McCann, Anthony Maley, and others conspired

and agreed to, and intended a common objective or course of action that resulted in the damages to Global Check.

56. Plaintiffs are informed and believe, and on that basis allege that one or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy, which proximately damaged Global Check by Defendants' infringement on the '529 patent.

### E. Alter Ego and Common Business Enterprise

57. Paragraphs 10-56 are incorporated by reference as made necessary by the context.

58. Plaintiffs are informed and believe, and on that basis allege that EPS' officers had several other companies with similar products. It was not clear whether these companies were subsidiaries of EPS or were commonly owned by EPS's primary shareholder, John Dorsey.

59. Records obtained from the Colorado Secretary of State and the Arapahoe County Appraisal District reflect that FlexPay, LLC and Elect-Check, Inc. share the same building at which EPS is located.

60. FlexPay, LLC and Elect-Check, Inc. were both set up by EPS' President, John Dorsey, and market the same or similar product as Global Check. Global Check seeks actual damages, special and incidental damages, statutory damages, consequential damages, punitive damages, and lost profits.

61. Furthermore, Plaintiff is informed and believe, and on that basis allege that

under the laws of the state of Colorado, where EPS, FlexPay, LLC and Elect-Check, Inc. are organized, those entities operate as a common business enterprise, and use such separate entities to transfer assets and avoid liability.

62.     EPS, FlexPay, LLC and Elect-Check, Inc. jointly and severally use Global Check's patented process, with respect to the sale of their respective deferred accounts receivables presentment services.

63.     The corporate distinction between EPS, FlexPay, LLC and Elect-Check, Inc. is a sham, and such new companies were established to further perpetrate a scam and avoid liquidated and unliquidated creditors.

64.     All the companies referenced above are affiliates of Dorsey and McCann, and Dorsey and McCann directly or indirectly direct and control the affairs of each entity.

**F.     Attorney's Fees and Costs**

65.     Paragraphs 10-64 are incorporated by reference as made necessary by the context.

66.     The conduct of each Defendant is intentional, malicious, and extraordinary, and subjects them to pay Global Check's attorney's fees and costs pursuant to 35 USCS § 285.

67.     As such, Plaintiff would request that all attorney's fees and costs incurred in this case be reimbursed to Plaintiff after hearing and trial of this matter.

## V.
## PRELIMINARY AND PERMANENT INJUNCTION

68. All previous paragraphs are incorporated into each and every paragraph pled herein, as required by the context.

69. Plaintiff additionally petitions this Court to issue relief in the way of a preliminary injunction, as monetary damages alone cannot adequately compensate Plaintiff for the harm caused to Plaintiff by the acts of Defendants EPS, FlexPay, LLC and Elect-Check, Inc., John Dorsey, Tom McCann, and Anthony Maley.

70. Defendants EPS, FlexPay, LLC and Elect-Check, Inc., John Dorsey, Tom McCann, and Anthony Maley, jointly and severally, have conspired and colluded and have, in fact, taken Global Check's information regarding the check conversion program, and have developed, made, used, and sold a program that, in every way, is protected by US Patent 7,747,529 B2.

71. The continued use of Global Check's patented process by Defendants dilutes the program and diminishes Global Check's federally guaranteed monopoly in the Accounts Receivable Conversation program.

72. Moreover, Defendants EPS, FlexPay, LLC and Elect-Check, Inc., John Dorsey, Tom McCann, and Anthony Maley, jointly and severally, have colluded to and have, in fact, incorporated one or more claims of the '529 patent into their respective products.

73. The damage done to Global Check and its ability to exploit the federally-granted monopoly it has on the patented process is greatly damaged by the conduct of those

Defendants.

74. Global Check requests that the Court enter injunctive relief against EPS, FlexPay, LLC and Elect-Check, Inc., John Dorsey, Tom McCann, and Anthony Maley as Global Check has proven both a right to recover on the claims that it has brought, and showed that irreparable injury will result if those Defendants continue to infringe on Global Check's patent for the Accounts Receivable Conversation program.

75. Global Check would further show there is no adequate remedy in law if Global Check patented information are utilized by those Defendants. Injunctive relief is not only appropriate and necessary, but it is a requirement to ensure that the parties do not engage in practices that would directly infringe and dilute Global Check's federal protections in its intellectual property.

## VI.
## AFFIRMATIVE RELIEF SOUGHT

76. All previous paragraphs are specifically incorporated into each and every paragraph herein.

77. Plaintiff seeks all damages to which it is entitled under the patent infringement laws, including a constructive trust imposed on EPS, FlexPay, LLC and Elect Check, Inc. for all EPS90 and other revenues derived from the sale of check processing products and services; special and punitive damages against EPS, FlexPay, LLC and Elect-Check, Inc., John Dorsey, Tom McCann, and Anthony Maley for knowing and continued infringement, even after being notified of Global Check's valid patent; disgorgement of revenues; and all other legal and equitable relief, as allowed by law. Plaintiff, Global

Check further seeks a

constructive trust to be placed on revenues from EPS90 and FlexPay programs as those monies rightfully and correctly belonged to Global Check.

78. Global Check further requests the recovery of attorney fees and costs pursuant to 35 USCS § 285, prejudgment and post judgment interest from Defendants.

79. Global Check further seeks that all Defendant's be held jointly and severally liable.

80. Global Check further requests special and punitive damages against all Defendants that knowingly infringed on Plaintiff's patent.

81. Plaintiff further requests that this Court, after trial and hearing, enter judgment against all Defendants, in favor of Plaintiff, Global Check, Inc., and award Global Check, Inc. all such other and further relief, in law and in equity, to which it may show itself justly entitled.

## VII.
## RELIEF SOUGHT

82. Plaintiff seeks the following relief from Defendants:

   a) actual damages;

   b) special and incidental damages;

   c) consequential damages;

   d) statutory damages;

   e) punitive damages;

   f) constructive trust;

   g) disgorgement;

h) lost profits;

i) Prejudgment and post judgment interest;

j) preliminary and permanent injunction

## VIII.
## JURY DEMAND

83. Plaintiff requests jury trial under the authority of Federal Rule of Civil Procedure 38(b).

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Global Check Services, Inc., prays this Court grant Plaintiff all such other and further relief to which Plaintiff may show itself to be justly entitled, in law and in equity.

Respectfully submitted,

By: /s/Charles M.R. Vethan
    Charles M.R. Vethan
    TSB No. 00791852
    Federal No. 19566
    Vethan Law Firm, P.C.
    3501 Allen Parkway
    Houston, Texas 77019
    Telephone: 713-526-2222
    Facsimile: 713-526-2230
    Email: edocs@vwtexlaw.com
Attorney for Plaintiff
Global Check Services